IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AMY BETH DEKEYSER,

                         Plaintiff,                         OPINION AND ORDER

     v.

                                                          16-cv-422-wmc

VICKI L. ZIMMERMANN,

                         Defendant.

---

*Pro se* plaintiff Amy Beth DeKeyser brought this lawsuit in state court on June 2, 2016, claiming workplace harassment by and seeking injunctive relief against defendant Vicki Zimmerman, her temporary supervisor at the United States Post Office in Waterloo, Wisconsin. Zimmerman removed the case under 28 U.S.C. § 1442(a) because the suit is premised on alleged actions of a federal officer acting under color of an agency or office of the United States -- the United States Postal Service ("USPS"). (Dkt. #1.)

Presently before the court are three motions. Originally, defendant Zimmerman moved for summary judgment, contending that DeKeyser's lawsuit is precluded by the Civil Service Reform Act of 1978 ("CSRA"). (Dkt. #14.) Later, plaintiff DeKeyser moved for a temporary restraining order and preliminary injunction to enjoin Zimmerman's allegedly harassing and abusive behavior. (Dkt. #27.) Most recently, Zimmerman moved to stay the September 18, 2017, trial date. (Dkt. #33.)

Because this court is precluded by the CSRA from hearing DeKeyser's claims unless she has exhausted her administrative remedies, and she acknowledges not having done so, the court must grant Zimmerman's motion for summary judgment without

prejudice to her refiling after exhausting those remedies, as well as deny her pending motion for a preliminary injunction.[1]

Finally, in light of the court's grant of summary judgment, defendant's motion to stay the trial date has been rendered moot.

UNDISPUTED FACTS[2]

## A. Claimed Harassment

At the time this lawsuit was filed in June of 2016, plaintiff Amy Beth DeKeyser was employed as a city carrier assistant at the Waterloo Post Office. Defendant Vicki L. Zimmerman was the officer in charge of that Post Office, and she was serving as DeKeyser's supervisor on a temporary basis. At that time, DeKeyser filed a petition for a temporary restraining order and motion for a preliminary injunction against Zimmerman in the Circuit Court for Columbia County, Wisconsin. Among other allegations, DeKeyser claimed in her state court filing -- and in her report to the Waterloo Police -- that on March 22, 2016, Zimmerman had harassed her at the post office by "throwing postal tubs on the dock," slamming the doors of her vehicle, "ramming and pushing" her, and "yelling at and belittling her." DeKeyser further claimed that this was part of a larger pattern of harassment from mid-May through June 2, 2016, during which

---

[1] Although it also appears likely that DeKeyser has no valid claim to enjoin harassing behavior by Zimmerman that allegedly took place more than a year ago, the court is not deciding whether such relief is available under state law for subsequent post-employment harassment by Zimmerman, if any, that neither party highlighted or addressed on summary judgment. As explained below, however, if such relief is available, it must be sought in state court.

[2] The court finds that the following facts are undisputed for purposes of summary judgment based on the defendant's proposed findings and plaintiff's responses (dkts. ##17 and 24), as well as the record as a whole, except where specifically noted otherwise.

2

Zimmerman subjected her to constant workplace bullying, "badgered her with questions and comments with no break," belittled her in front of her coworkers, threatened her with disciplinary action, and otherwise intimidated and verbally abused her.

According to the documents submitted on summary judgment, the last day DeKeyser ever actually reported for regular duty at the post office was June 2, 2016, when she left work and filed this lawsuit in state court seeking a temporary restraining order. On June 2, the same day DeKeyser filed her petition, the circuit court entered a temporary restraining order and scheduled an injunction hearing for July 16, 2016. However, on June 15, 2016, the United States Attorney removed the case to this court on Zimmerman's behalf under 28 U.S.C. § 1442(a), divesting the circuit court of further jurisdiction.

**B. Administrative Proceedings and Termination of Employment[3]**

The National Association of Letter Carriers (AFL-CIO) is the exclusive union representative for all United States Postal Service city carrier assistants. The NALC has entered into a series of collective bargaining agreements with the Postal Service on behalf of its members. The agreement then in effect sets forth grievance and arbitration procedures for assistants like DeKeyser to raise administrative disputes or complaints related to their employment.

---

[3] In opposing defendant's motion for summary judgment and supporting her own motion for injunctive relief, DeKeyser includes -- although she has not properly authenticated -- a number of documents that appear to be a partial administrative record of her related USPS grievances. (Dkts. ## 25 and 31.) She also filed (without explanation) what appears to be the administrative record from DeKeyser's unsuccessful appeal of the USPS's termination of her employment. (Dkt. #25-5.) The following is the court's attempt to summarize the administrative proceedings based on those records and the parties' submissions, when viewed in a light most favorable to plaintiff.

On or about June 25, 2016, DeKeyser contacted the USPS Equal Employment Opportunity Commission and initiated a process to address her grievances. At that time, DeKeyser also submitted her "Information for Pre-Complaint Counseling," which alleged that Zimmermann harassed and belittled her, as well as discriminated against her, based on her sex and mental and physical disabilities, and stated that she was seeking "to work in a non-hostile work environment." DeKeyser subsequently accepted the government's offer to participate in mediation, which triggered communications through a USPS alternative dispute resolution specialist named Aida Pantoja. Based on the administrative record, it appears that resolution specialist Pantoja processed DeKeyser's claims and reviewed responses by Zimmerman and other management officials to DeKeyser's specific allegations.

According to the administrative record, it appears that DeKeyser failed to report for work as scheduled from June 2nd through July 30th without further notice or explanation. When given an opportunity to explain herself at a hearing on August 5th, DeKeyser (with assistance from her NALC union representative Andrew Khitsun) explained that she did not feel safe in what she described as a hostile work environment. In response, USPS management acknowledged that DeKeyser's primary problem was with Zimmerman, but also noted that she was no longer assigned to the same post office location as DeKeyser, making her failure to notify anyone before or during her absences from work unexcused. Therefore, on August 8, 2016, DeKeyser was issued a letter of removal for being absent without leave.

On September 22, 2016, resolution specialist Pantoja also wrote a letter to

DeKeyser, copying Khitsun, explaining that there would be no offer of settlement or other resolution for her discrimination or harassment claims, and that she could file a formal complaint through the USPS Equal Employment Opportunity process if she wished. (Dkt. #25-4.) In response, DeKeyser proceeded to file a formal complaint with the USPS on September 27, 2016, requesting transfer to a different post office, placement in a "non-hostile" work environment, a restraining order against defendant Zimmerman, and monetary compensation of approximately $14,000. (*Id.*)

Unfortunately, the record does not reflect how the USPS responded to this formal complaint, nor how much further (if at all) DeKeyser pursued her administrative remedies. What is clear is that after an administrative appeal, the USPS dispute resolution team found that there was just cause for her removal under the terms of the collective bargaining agreement, and affirmed a decision on October 6, 2016, which gave DeKeyser 14 days to resign before her termination went into effect. (*Id.*; dkts. ## 25-22; 25-23; 25-24).

OPINION

I. Motion for Summary Judgment

Although a bit muddled, the defendant's motion for summary judgment alternately asserts that DeKeyser's claims are precluded or preempted by the Civil Service Reform Act of 1978, which is applicable to U.S. Postal Service employees under 39 U.S.C. § 1005, or at minimum may not proceed for failure to exhaust her administrative

5

remedies under that Act.[4]  Under Seventh Circuit law, at least the latter is correct.[5]

"When a case is removed from a state court pursuant to 28 U.S.C. § 1442, the district court's basis for jurisdiction is only derivative of that of the state court." *Edwards v. United States Department of Justice*, 43 F.3d 312, 315 (7th Cir. 1994); *see also Rodas v. Seidlin*, 656 F.3d 610, 615 (7th Cir. 2011); *Henricks v. United States*, No. 16-CV-101-BBC, 2016 WL 4581353, at *2 (W.D. Wis. Sept. 1, 2016).  In other words, this court has jurisdiction to entertain only those claims that DeKeyser could have brought in her state court action.  *Minnesota v. United States*, 305 U.S. 382, 389 (1939); *Edwards*, 43 F.3d at 316.  Thus, to prevail on her summary judgment motion contending that the court lacks subject matter jurisdiction in this case, Zimmerman must show that federal law precluded DeKeyser's claim from being brought in state court in the first place.

"[S]cattered throughout Title 5 of the U.S. Code," the Civil Service Reform Act ("CSRA") "is a detailed, comprehensive effort to regulate employee-management relations in the federal government."  *Schrachta v. Curtis*, 752 F.2d 1257, 1259 (7th Cir. 1985) (detailing CSRA's provisions for administrative and judicial review of federal personnel decisions, including various "adverse actions" and "prohibited personnel

---

[4] If a claim is precluded entirely by the CSRA, the Seventh Circuit has said (at least for a *Bivens* claim) that the proper basis for dismissal would be for failure to state a claim upon which relief can be granted, *not* lack of subject matter jurisdiction. *Richards v. Kiernan*, 461 F.3d 880, 886 (7th Cir. 2006); *Massey v. Helman*, 196 F.3d 727, 738 (7th Cir. 2000).

[5] Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering Zimmerman's motion for summary judgment, the court, therefore, construes all facts and draws all reasonable inferences in DeKeyser's favor.  *Id.* at 255.

practices") (citing 5 U.S.C. §§ 1206, 2302, 7503, 7512-13, 7701-03). In *Schrachta,* the Seventh Circuit found such an elaborate statutory and regulatory scheme consistent with Congress's intent that the CSRA "be the exclusive means to remedy violations of the Act's substantive provisions." 752 F.2d at 1260.

As a result, many allegedly improper actions taken by a federal officer that might otherwise form the basis for a common law tort or other lawsuit by a federal employee are preempted by the CSRA.

> Allowing resort to alternative remedies for complaints about matters within the statute's scope would undermine the CSRA because the statute "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *United States v. Fausto*, 484 U.S. 439, 443 (1988). Lower courts, following *Fausto,* have recognized that the CSRA essentially preempted the field by "supersed[ing] preexisting remedies for all federal employees." *LeBlanc v. United States*, 50 F.3d 1025, 1030 (Fed. Cir. 1995). . . . . As the Supreme Court stated in *Fausto*, Congress recognized the primacy of both the Merit Systems Protection Board (MSPB) and the Federal Circuit in interpretive matters under the CSRA. Delegating the task of interpreting the CSRA solely to these two bodies fosters the development "of a unitary and consistent Executive Branch position on matters involving personnel action, avoids an unnecessary layer of judicial review in lower federal courts, and encourages more consistent judicial decisions." 484 U.S. at 449 (citations omitted).

*Ayrault v. Pena*, 60 F.3d 346, 348 (7th Cir. 1995). Accordingly, this court "must accord respect to the administrative system established by statute for reviewing federal personnel actions." *Sawyer v. Nicholson*, 2007 WL 3087177, at *3 (N.D. Ill. Oct. 19, 2007) (quoting and citing Seventh Circuit cases) (internal quotations and citations omitted). Indeed, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Id*.

Although "[m]any plaintiffs would prefer to begin their campaigns against federal agencies in district court rather than trudge their way through administrative proceedings," therefore, the CSRA "forbids this jump for all classes of federal employees whether or not they are entitled to administrative review." *Paige v. Cisneros*, 91 F.3d 40, 43 (7th Cir. 1996). Thus, employment personnel actions by federal agency officers within the scope of the CSRA cannot be challenged in court, at least until administrative remedies have been exhausted.

As defendant points out, courts in other jurisdictions have also held that a variety of federal and state statutory and common-law claims (as well as constitutional claims under *Bivens* and 42 U.S.C. § 1983) arising out of federal employment disputes are preempted by the CSRA, precluding suits for both damages and injunctions. *See, e.g.*, *Desmond v. Dep't of Defense*, 989 F.2d 484 (1st Cir. 1993); *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991); *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1576 (11th Cir. 1990); *Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 962 (10th Cir. 1989); *Weber v. Salyer*, 911 F. Supp. 376, 37-78 (E.D. Mo. 1996). While the Seventh Circuit has not specifically held that actions for injunctive relief are precluded by the CSRA, *see Pubentz v. Holder*, 819 F. Supp. 2d 721, 725 (N.D. Ill. 2011), it certainly adheres to the general rule that the Act provides an exclusive remedy and other claims arising from a federal employment personnel dispute are precluded. *Robbins v. Bentsen*, 41 F.3d 1195, 1202 (7th Cir. 1994) (dismissing First and Fifth Amendment *Bivens* claim as precluded because "Congress has provided an elaborate remedial scheme, the CSRA, for the protection of Robbins's constitutional rights in the employment context"); *see also Coe*

8

*v. N.L.R.B.*, 40 F. Supp. 2d 1049, 1053-54 (E.D. Wis. 1999) (collecting cases holding similarly).

In *Coe*, a Title VII case in which the plaintiff alleged racial discrimination and harassment by numerous co-workers at the federal agency where he worked, the district court granted defendants' motion for summary judgment and dismissed plaintiff's constitutional and state law claims under Wis. Stat. § 134.01 (for malicious injury to reputation). *Id.* at 1053. The court reasoned that since these claims had no basis independent from plaintiff's employment claim, they were preempted by Title VII and the CSRA, and Title VII provided plaintiff's exclusive remedy for employment discrimination in court. *Id.* at 1054.

In contrast, in *Gustafson v. Adkins*, 803 F.3d 883 (7th Cir. 2015), a federal officer at a VA facility discovered that her supervisor had installed a hidden surveillance camera in the ceiling of an office used by female officers as a changing area. When Gustafson learned that the camera had captured images of her changing in and out of her uniform over a period of approximately two years, she brought a *Bivens* claim against her supervisor for an unconstitutional search in violation of the Fourth Amendment. The Seventh Circuit noted that the CSRA "may preempt federal claims that fall within its scope even when its remedy is not perceived as equally effective." *Id.* at 888. However, the court held that Gustafson's claim was not preempted or precluded by the CSRA for two related reasons. First, the court found that placing an illicit hidden camera to watch female subordinate officers change could not reasonably be considered a potential "disciplinary or corrective action" or any other "personnel action" within the scope of the

9

CSRA, as Adkins had argued. *Id.* at 888-89. Second, the court found the conduct so far beyond a typical employment or workplace dispute or grievance, involving such "criminal and outrageous conduct" by a supervisor, that it required a judicial remedy for the alleged constitutional violation. *Id.* at 889 (quoting *Moon v. Phillips*, 854 F.2d 147, 150 (7th Cir.1988)). As a result, the court "rejected Adkins's argument that the CSRA precluded Gustafson's *Bivens* claim at the motion to dismiss stage." *Id.* at 890.

Here, DeKeyser alleges vaguely in various documents that because of her sex, as well as a physical and mental disability, Zimmerman (1) "pushed," "shoved," or "rammed" her, (2) abused and belittled her in front of other employees, and (3) generally subjected her to harassment and discrimination. While these allegations support a claim that DeKeyser's (relatively brief) tenure under Zimmerman's supervision at the Waterloo post office was, to say the least, dysfunctional, they are not so outlandish or heinous as to remove them from a workplace dispute. On the contrary, DeKeyser's grievances all relate to the conditions of her employment and work environment.

As the USPS dispute resolution team found after investigating, DeKeyser's core grievances against Zimmerman fall for better or for worse within "the work environment created in Waterloo Post Office, where people [have] accuse[d] one another of 'being a time bomb ready to go off,' [of being] 'dangerous,'" as well as claiming "she is going to lose it and someone is going to get hurt." (Dkt. #25-5, at 2.) The USPS found all of these statements in letters by other employees, still concluding based on the allegations and evidence that "the only argument is who is responsible." *Id*.

Certainly, DeKeyser and Zimmerman had an antagonistic, even unprofessional relationship, with each feeling the other was to blame for the tension and chaos at the post office. Moreover, DeKeyser's allegations paint Zimmerman as an overbearing, inappropriate supervisor trying to impose her will on DeKeyser and other subordinates. But even reading the evidence in the light most favorable to DeKeyser, it appears that Zimmerman's alleged actions were within the scope of the CSRA, being in the nature of "adverse actions" or "prohibited personnel practices" subject to a "disciplinary or correction action" or "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A); *see also Gustafson*, 803 F.3d at 888-90; *Schrachta*, 752 F.2d at 1259. As such, they are not the kind of "criminal and outrageous conduct" by a supervisor that might justify extending a judicial remedy, even a temporary one, pending resolution of the dispute under the CSRA's remedial structure. *Gustafson*, 803 F.3d at 889.

Regardless, the more serious aspects of DeKeyser's claim, which might arguably fall outside the scope of the CRSA, collapse as a matter of undisputed fact from a lack of support in the evidentiary record on summary judgment. For example, DeKeyser provides no evidence supporting her vague claim of sex or disability discrimination of the kind that might support a Title VII claim for employment discrimination. *See Coe*, 40 F. Supp. 2d at 1053-54. DeKeyser does claim vaguely that Zimmerman "physically pushed" her on one occasion on March 22, 2016, but she does not claim meaningful injury arose out of it, despite her calling the police, nor claim that any assault or similar physical incident ever happened again. (Pl. Br., dkt. #23, at 3, 7.) Rather, a Waterloo

police officer investigated that incident, spoke to both women between March 22 and March 29, and filed a police report dated April 7, 2016, concluding that "due to lack of injury, no other witnesses, and no camera footage, [the officer] could not determine probable cause existed that the disorderly conduct happened." (Dkt. #25-1, at 5.) While hardly definitive evidence, it was *plaintiff's* burden to show conduct justifying a judicial remedy.

DeKeyser also alleges that Zimmerman harassed her outside of work hours, but a closer look at the record reveals that DeKeyser is really complaining about phone calls and text messages that Zimmerman sent: (1) instructing DeKeyser when she needed to report for work; and (2) later inquiring about her medical status and asking when her doctor said she could return to work. Critically, DeKeyser identifies *no* action by Zimmerman that was unrelated to their short-term workplace relationship, and none at all after they last worked in the same post office together on June 2, 2016. As critically, Zimmerman points out that DeKeyser did not exhaust her administrative remedies with respect to her own administrative grievances against Zimmerman's actions, including those she pursued (directly or through her union representative), and for which she began to invoke *agency* procedures. DeKeyser does not dispute any of this. Instead, she argues that the administrative processes available to her are not fair and "the court should not rely on the grievance procedure or USPS EEO process . . . because the Postal service has more influence over these decisions and may not issue a fair judgment for the Plaintiff." (Pl. Opp. Br., Dkt. #23, at 4.)

In the end, this is *not* a response to defendant's assertions of a lack of jurisdiction, failure to state a claim, or failure to exhaust administrative remedies. Rather, it amounts to a concession of failure to exhaust, while seeking to excuse that failure by asserting that pursuing those remedies would have been futile. But plaintiff did not adequately develop this argument, nor is it an exception clearly recognized under the CSRA, certainly not on the basis that the procedures or remedies it offers are actually perceived to be inadequate compared to a judicial remedy. *Gustafson*, 803 F.3d at 888; *Paige*, 91 F.3d at 43; *Sawyer*, 2007 WL 3087177, at *3. DeKeyser also acknowledges that administrative remedies were available to her (indeed, she availed herself of some), and her *belief* that she would not have succeeded in obtaining a favorable resolution is not enough to excuse her failure to exhaust them. *See Richards v. Kiernan*, 461 F.3d 880, 885-86 (7th Cir. 2006) ("It would indeed be ironic to allow a litigant to claim 'futility' merely because her legal position was so weak that she was certain to lose her case.").

Because DeKeyser does not dispute that she failed to exhaust her administrative remedies, her workplace grievances as to Zimmerman's treatment during her time as DeKeyser's supervisor from March to June 2016 are precluded from this court's consideration. Accordingly, Zimmerman's motion for summary judgment will be granted.

## II.  Motion for Injunctive Relief

After Zimmerman moved for summary judgment, DeKeyser sought a temporary restraining order and preliminary injunction requiring Zimmerman to cease harassing her and avoid contacting or being in her presence. (Dkt. #27, at 4.) However, she appears

to be seeking only injunctive relief under Wis. Stat. § 813.125 (harassment restraining orders and injunctions) based on alleged events that took place between March 22 and June 2, 2016.

To obtain a preliminary injunction, a moving party must initially show that she has: (1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied; and (2) some likelihood of success on the merits. *American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012); *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011).

For the reasons already explained above, the court finds that DeKeyser cannot succeed on the merits of her claim so long as it is directed toward past workplace grievances that are subject to the CSRA. Moreover, DeKeyser has only offered conclusory statements that she feels stress and fears for her safety due to "possible retaliation from new developments." (Dkt. #23 at 7, #27 at 3.) So even if the court were inclined to consider temporary relief (or extend it based on the state court's initial entry of a temporary restraining order) pending DeKeyser's exhausting her administrative remedies, DeKeyser has still not come forward with any evidence that she is in danger of irreparable harm *at this time*. Finally, as alluded to above, any action by Zimmerman after DeKeyser left the Post Office's employ would fall outside the scope of Zimmerman's duties as an officer of the United States acting under color of federal law, and thus the basis for this court's exercising federal jurisdiction in the first place. 28 U.S.C. § 1442.

III. **Motion to Stay**

Because the court is granting Zimmerman's motion for summary judgment for

failure to exhaust, and DeKeyser has failed to show that she is entitled to some interim relief, Zimmerman's motion to stay the September 18 trial date is rendered moot.

If DeKeyser has some unarticulated reason to believe that she is in real danger of *future* harassment or harm by Zimmerman, her remedy is now in state court, not federal.

ORDER

IT IS ORDERED that:

1) Defendant Vicki I. Zimmerman's motion for summary judgment (dkt. #14) is GRANTED without prejudice for failure to exhaust administrative remedies under the Civil Service Reform Act of 1978.

2) Plaintiff Amy Beth DeKeyser's motion for a temporary restraining order and preliminary injunction (dkt. #27) is similarly DENIED without prejudice.

3) Defendant's motion to stay the September 18, 2017 trial date (dkt. #33) is DENIED as moot.

Entered this 14th day of August, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge